## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

WESTFIELD NATIONAL
INSURANCE COMPANY,

       Plaintiff,

v.                                                                                                  CIVIL ACTION NO.  5:21-cv-00571

TIMMUS, LLC, and
KENNETH W. HARSHAW, *as
Administrator of the Estate of*
Kenneth Isaiah Brown,

         Defendants.

and

KENNETH W. HARSHAW, *as
Administrator of the Estate of*
Kenneth Isaiah Brown,

         Third-Party Plaintiff,

v.

CHARLES B. MCCORMICK, II, *individually*, and
SOUTHERN BREEZE B&G, LLC, *d/b/a
WHISKEY BEACH BAR & GRILL,*

         Third-Party Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

Pending are Defendant Kenneth W. Harshaw's Motion to Dismiss, filed on December 17, 2021, [Doc. 14], Defendant Timmus, LLC's ("Timmus") Motion to Dismiss, filed on January 11, 2022, [Doc. 20], Defendant Southern Breeze B&G, LLC's Motion to Dismiss the Third-Party Complaint, filed January 31, 2022, [Doc. 26], and Mr. Harshaw's Supplemental Motion to Dismiss, filed March 8, 2022, [Doc. 29]. The matter is ready for adjudication.

## I.

On April 30, 2020, Mr. Harshaw, as Administrator of the Estate of Kenneth Isaiah Brown, instituted an action in the Circuit Court of Raleigh County, Civil Action No. 20-C-177-D; Timmus and others are named as defendants. [Doc. 1 ¶ 11]. Westfield National Insurance Company ("Westfield") instituted another action here for Declaratory Judgment on October 21, 2021. [Doc. 1]. Mr. Harshaw filed a Motion for Leave to Amend his Complaint in the underlying state action on November 19, 2021, seeking to further expand upon the allegations against Timmus based upon evidence discovered after the filing of the original Complaint. [Doc. 15-1]. On February 11, 2022, the Honorable Judge Andrew Dimlich, Judge for Tenth Judicial Circuit (Raleigh County), granted Mr. Harshaw leave to amend his Complaint. [Doc. 29-1 at 5]. The Order from Judge Dimlich acknowledged that the amended complaint named insurance carriers, including Westfield, as defendants. [*Id.*].

On December 14, 2021, Mr. Harshaw filed a Motion to Dismiss Westfield's Complaint for Declaratory Judgment. [Doc. 14]. Westfield responded on December 27, 2021. [Doc. 19]. On January 11, 2022, Timmus likewise filed a Motion to Dismiss. [Doc. 20]. Westfield responded on January 18, 2022. [Doc. 23]. On March 8, 2022, Mr. Harshaw filed a Supplemental Motion to Dismiss after being granted leave to file his Amended Complaint in the underlying state action. [Doc. 29]. On March 21, 2022, Westfield responded. [Doc. 30].

## II.

The Federal Declaratory Judgment Act (the "Act") empowers federal district courts, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought." 28 U.S.C. § 2201(a). The Act "was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affs. Assocs. v. Rickover*, 369 U.S. 111, 112 (1962). A federal district court is "under no compulsion" to exercise jurisdiction under the Act. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

   A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (cleaned up). Such an action should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id.*

   When a district court is presented with a federal claim that is simultaneously being adjudicated in state court, "it should ascertain whether the question in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495; *see Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996). This may include consideration of whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*; *see Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992). If the "relevant state law is not problematic or difficult to apply," the state's interest in having the issues decided in state court is weakened. *Poston*, 88 F.3d at 258.

   In *Brillhart v. Excess Ins. Co. of America*, the petitioner brought a suit in Missouri state court. 316 U.S. at 492. The petitioner's insurance company refused to defend the suit,

claiming petitioner's policy did not cover the incident. *Id.* The respondent insurance company, "anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Petitioner moved to dismiss the suit, "principally on the ground that the issues involved in the suit could now be decided in the . . . proceeding pending in the Missouri state court." *Brillhart*, 316 U.S. at 492. The district court dismissed respondent's suit without considering whether respondent's claims could be raised in the state court proceeding. *Id.* at 494. The appellate court reversed the district court's judgment, holding the dismissal of the suit was an abuse of discretion. *Id.*

The Supreme Court held that the district court was under no compulsion to exercise jurisdiction in the case and that granting dismissal was discretionary with the district court. *Id.* The Supreme Court also stated,

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* at 495. The Supreme Court remanded the case to the district court to "properly exercise its discretion in passing upon the petitioner's motion to dismiss this suit." *Id.* at 498.

In *Wilton v. Seven Falls Co.*, the Supreme Court reaffirmed *Brillhart*. *Wilton*, 515 U.S. at 282. The High Court in *Wilton* stated that *Brillhart* "makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* The Supreme Court also noted that *Brillhart* did not set out an exhaustive list of factors for the exercise of the district court's discretion. *Id.* It also interpreted *Brillhart* to mean that "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law

issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed. *Id.* at 277 (internal quotation marks and citation omitted); *see Poston*, 88 F.3d at 257.

Our Court of Appeals has focused on four factors in determining whether to proceed with a federal declaratory judgment action when a parallel state action is pending. *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). The so-called *Nautilus* factors are

> (1) whether the state has a strong interest in having the issues decided in courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact of law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)).


### III.

The Court is empowered to entertain Westfield's declaratory judgment action, as this is a "case of actual controversy" within this Court's diversity jurisdiction. The question remains whether the underlying factors favor retention.

### A.    *West Virginia's Interest*

West Virginia law would govern interpretation of the issues in this case. "Absent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law." *Mitcheson*, 955 F.2d at 238 (quoting *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 n. 32 (1984)). The state's interest is stronger concerning questions of insurance law. *See, e.g.*, *SEC v. Nat. Sec., Inc.*, 393 U.S. 453, 459 (1969). "The state's interest is balanced, however, by an

out-of-state party's interest in a federal forum." *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001) (citing *Mitcheson*, 955 F.2d at 237). "[T]he Fourth Circuit has consistently followed the rule that the state's interest, while important, is diminished if the state-law issues are not novel, unsettled, difficult, complex, or otherwise problematic." *Id.* at 695.

The case involves issues of insurance, liability, and contracts, which will be decided under West Virginia law. While the Supreme Court of Appeals of West Virginia has not ruled on the meaning and applicability of the precise policy language at issue, it has provided sufficient guidance in the broader areas of insurance, liability, and contracts generally. Accordingly, the first *Nautilus* factor weighs in favor of not abstaining.

**B.     Efficiency**

In evaluating the second *Nautilus* factor, a district court should "focus primarily on whether the question in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s] that are already pending in the state court." *Nautilus*, 15 F.3d at 378–79 (internal quotation marks and citation omitted). "[D]eclaratory judgment should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Crossroads Lounge*, 140 F. Supp. 2d at 690 (quoting *Quarles*, 92 F.2d at 325). "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495.

Both Westfield and Mr. Harshaw are parties in the underlying state court action. Additionally, there are parties in the underlying state action who cannot be added to the case at bar. That said, discovery may be sought from nonparties to the instant case. While there is a bit of

overlap, the Court is unable to determine that efficiency weighs in favor of abstention. The efficiency factor is deemed neutral.

### C.       Entanglement Between State and Federal Courts

In the instant action, as "[i]n many declaratory actions brought to resolve a duty to defend or indemnify an insured in a controversy already the subject of state court litigation, there will be overlapping issues of fact or law between the state and federal actions." *Mitcheson*, 955 F.2d at 239. In some such cases where

> the insured may well be collaterally estopped from relitigating the overlapping issues decided in the federal action . . . such issue preclusion will likely "frustrate the orderly progress" of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution.

*Mitcheson*, 955 F.2d at 239 (quoting *Phx. Ins. Co. v. Harby Marina Inc.*, 294 F. Supp. 663, 664 N.D. Fla. 1969)). In such cases, it is also likely that the state court will have "to consult federal law to ascertain the preclusive principles at work . . . thereby creating further entanglement." *Crossroads Lounge*, 140 F. Supp. 2d at 698 (quoting *Harnett v. Billman*, 800 F.2d 1308, 1312–13 (4th Cir. 1986)). But this is not a task with which courts are unfamiliar. Such issues are decided daily in our cooperative state and federal judicial scheme.

Westfield has been named as a defendant in the underlying state action. One of the primary issues in the underlying action is whether Westfield has a duty to indemnify Timmus for damages that are recoverable by Mr. Harshaw for the wrongful death of Kenneth Isaiah Brown. [Doc. 29-2 at 32–33]. Westfield seeks a finding that Timmus's claim of indemnification is excluded by its policy with Westfield. [Doc. 1 at 6]. The Court is as well-equipped to make this determination, as is the coordinate state tribunal. To the extent necessary, the Court may also apply the same preclusion rules to be used by the state court in settling the parties' respective obligations.

That type of application of settled state judicial precedent presents no realistic threat of entanglement between the state and federal courts. Thus, the third factor weighs in favor of retained jurisdiction.

### D.    *Procedural Fencing*

The fourth factor articulated by the *Nautilus* Court is used to determine "whether the declaratory judgment action is being used merely as a device for 'procedural fencing' -- that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" *Nautilus*, 15 F.3d at 377 (internal citation omitted). "Where a dispute is separate and independent from the ongoing litigation in the state courts, it is particularly appropriate for early resolution in a declaratory action." *Crossroads Lounge*, 140 F. Supp. 2d at 700 (cleaned up).

Westfield instituted this action before it was joined as a party in the underlying state action; the most legitimate inference is that it sought to -- as do countless insurers annually -- have its policy rights declared in a federal forum; and, as noted, Congress has unequivocally authorized as much. The Court thus concludes this factor counsels against abstention.

### IV.

Based upon the foregoing, the Court **DENIES** the pending Motions to Dismiss [**Docs. 14, 20, 26, 29**].

The Clerk is directed to send a copy of this written opinion and order to the parties and counsel of record in this matter.

ENTER:          September 27, 2022



Frank W. Volk
United States District Judge